IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ASSOKCIATION FOR FINANCIAL COUNSELING AND PLANNING EDUCATION 79 S. State Street, Suite D3 Westerville, Ohio 43081, Plaintiff, v. NACCC, Inc. 209 6th Street Indialantic, Florida 32903, Defendant. | Case No.: 2:16-cv-994 (JUDGE _____) |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

Plaintiff Association for Financial Counseling and Planning Education ("Plaintiff" or "AFCPE"), by and through its undersigned counsel, brings this action against Defendant National Association for Certified Credit Counselors, NACCC, Inc. ("Defendant" or "NACCC") and alleges as follows:

**SUMMARY OF ACTION**

1. This is an action by AFCPE against NACCC for trademark infringement and false designation of origin and false association under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and for common law trademark infringement and unfair competition.

2. Since 1983, AFCPE has certified professionals in the field of personal finance and financial counseling. AFCPE has a longstanding reputation of high quality certification and sets the standards of excellence for this field.

3. AFCPE created the Accredited Financial Counselor® (AFC®) certification in the

early 1990s to meet the growing need for financial counselors to assist and educate clients on financial matters such as investing and debt management in order to help clients build financial stability.  Similarly, AFCPE created the Certified Housing Counselors (CHC®) certification in response to a need for financial counselors in the housing sector.

4. Notwithstanding the existence of AFCPE's well-known and highly regarded Accredited Financial Counselor®, AFC®, Certified Housing Counselor™, and CHC® trademarks (collectively, the "AFCPE Trademarks"), NACCC has sought to unfairly and unlawfully benefit from and misappropriate the goodwill of those trademarks by offering certification programs for "Accredited Financial Counselors", "Accredited Financial Counseling Professionals", and "Certified Housing Counselors" and using the trademark ACCREDITED FINANCIAL COUNSELOR, ACCREDITED FINANCIAL COUNSELING PROFESSIONAL, and CERTIFIED HOUSING COUNSELORS (collectively, the "Infringing Trademarks").

5. Despite the use of identical names of the certifications, the process for obtaining NACCC's "Accredited Financial Counselor" and "Certified Housing Counselor" certifications is far less rigorous than that of the AFCPE.

6. Because NACCC purports to certify under AFCPE's trademarked designations of Accredited Financial Counselor and Certified Housing Counselor, employers and the public are likely to be confused into assuming that students of NACCC have been trained under the same rigorous program as the professionals certified by AFCPE.

7. NACCC's use of the Infringing Trademarks creates confusion, which is damaging both to AFCPE and to its past and present students who rely on the reputation of their certifications to secure employment.

8. Indeed, AFCPE has received comments and complaints from potential and current

2

students and members of the industry evidencing the fact that NACCC's use of these marks is causing actual confusion in the marketplace.

9. NACCC's use of marks identical and confusingly similar to AFCPE's trademarks for use in connection with highly similar certification services constitutes trademark infringement, false designation of origin, and unfair competition under the laws of the United States and the State of Ohio.

10. AFCPE seeks a permanent injunction against NACCC's use of the infringing trademarks, as well as damages, attorneys' fees, and injunctive relief.

## THE PARTIES

11. Plaintiff AFCPE is a Delaware corporation having its principal place of business at 79 S. State Street, Suite D3, Westerville, Ohio 43081.

12. Defendant NACCC is a Florida corporation having its principal place of business at 209 6th Street, Indialantic, Florida 32903.

## JURISDICTION AND VENUE

13. This court has personal jurisdiction over NACCC pursuant to Ohio's long-arm statute, Ohio Rev. Code § 2307.382, because NACCC transacted business in the State and because NACCC has intentionally caused direct tortious injury to AFCPE with knowledge that AFCPE is located in and operates in business in Ohio. Such tortious acts include but are not limited to NACCC advertising its services using the Infringing Marks through an interactive website that expressly permits Ohio residents to register for NACCC certification exams and NACCC online courses and otherwise actively transacts Ohio-directed business. Moreover, Defendant has certified and, on information and belief, has licensed NACCC certification marks to an Ohio resident.

14. This Court has subject matter jurisdiction over AFCPE's claims arising under

3

federal law, pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) and (b), and 15 U.S.C. § 1121. This Court has subject matter jurisdiction over AFCPE's claims arising under the common law of the State of Ohio pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

15. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1391(c), as NACCC is subject to personal jurisdiction and thus resides in this judicial district and because a substantial part of the events or omissions giving rise to AFCPE's claims occurred in this judicial district.

## FACTUAL BACKGROUND

16. AFCPE is a nonprofit, professional organization dedicated to educating, training, and certifying financial counselors and educators. AFCPE offers certification programs in the fields of personal finance, financial and housing counseling, and financial management to individuals who meet AFCPE's rigorous education, experience, and ethical requirements.

17. In addition to its certification programs, AFCPE publishes a newsletter and research journal which contain articles on financial education, financial counseling, and financial management.

18. Since at least 1993, AFCPE has offered programs to certify students as Accredited Financial Counselors® (AFC®) and Certified Housing Counselors (CHC®).

19. There are currently more than 1,850 Accredited Financial Counselors® (AFC®) and Certified Housing Counselors (CHC®) who service thousands of clients throughout the U.S.

20. AFCPE owns the following relevant federal trademark registrations. Attached hereto as Exhibits 1-3 are the true and correct copies of the trademark registration certificates issued

by the United States Patent and Trademark Office.

| Mark | U.S. Reg. No. |
|---|---|
| ACCREDITED FINANCIAL COUNSELOR | 4,869,171 |
| AFC | 3,091,880 |
| CHC | 3,091,879 |

21.     Through AFCPE's substantially exclusive and continuous use in commerce, the Accredited Financial Counselor®, AFC® and Certified Housing Counselor (CHC®) certification marks have become distinctive of AFCPE's services.

   A.  **AFCPE's Certification Process**

22.     Students earn the Accredited Financial Counselor® (AFC®) and Certified Housing Counselor (CHC®) certifications through rigorous programs offered by 16 universities, which include the University of Missouri, University of Florida, University of Nebraska, and Iowa State University. Students may also be certified through an equally rigorous distance learning program administered by Texas Tech University.

23.     Both the distance and in-person learning programs require the students to meet exacting requirements in order to earn the certifications.

24.     Students seeking the Accredited Financial Counselor® (AFC®) certification must:

   a. Pass a final exam

   b. Complete and document 1,000 hours of financial counseling experience

   c. Obtain three letters of reference attesting to professional competence and experience

   d. Sign and adhere to the AFCPE Code of Ethics

   e. Pay the program cost of $1,200-$1,250

5

25. Students seeking the Certified Housing Counselor (CHC®) certification must:

   a. Pass a final exam

   b. Complete and document 1,500 hours of admissible housing counseling experience

   c. Obtain three letters of reference attesting to professional competence and experience

   d. Sign and adhere to the AFCPE Code of Ethics

   e. Pay the program cost of $1,850

26. AFCPE counselors must regularly participate in continuing education programs in order to maintain their designations. Continuing education enhances the professionals' capacity to serve their clients, protects the public interest, and upholds the rigor of the certification programs. AFCPE provides a detailed guide to its counselors on how to maintain their designations.

27. Professionals certified as Accredited Financial Counselors® (AFC®) must participate in 30 hours of continuing education credits within every two-year period and must report their continuing education to AFCPE.

28. Professionals certified as Certified Housing Counselors (CHC®) must participate in 45 hours of continuing education credits every two-year period and must report their continuing education to AFCPE.

   B. Reputation of the Designations

29. Students who are pursuing the Accredited Financial Counselor® (AFC®) or Certified Housing Counselor (CHC®) designation and professionals who have already obtained the designations rely on the reputation of those designations to secure employment.

30. The Accredited Financial Counselor® (AFC®) program is accredited through the National Commission for Certifying Agencies, which enhances the value of the AFC® designation to employers, colleagues, and consumers.

31. The Accredited Financial Counselor® (AFC®) and Certified Housing Counselor (CHC®) are recognized by consumers, government officials, and businesses as marks identifying high quality educational programs originating with AFCPE.

32. Employers recognize Accredited Financial Counselor® (AFC®) and Certified Housing Counselor (CHC®) certification holders as distinctive because they have participated in rigorous training required to obtain those certifications.

33. Zeiders Enterprises, an organization which provides support services to members of the United States military, requires its Personal Financial Counselors to hold the Accredited Financial Counselor® (AFC®) certification.

34. The AFCPE's AFC® certification, in particular, has been recognized and used by Department of Defense and the Consumer Financial Protection Bureau ("CFPB") due to its rigor and comprehensive content in addition to the AFCPE's commitment to ongoing continuing education and ethics.

35. In 2006, AFCPE joined with the FINRA Investor Education Foundation to create the *FINRA Foundation Military Spouse Fellowship Program*, which provides military spouses the opportunity to earn the Accredited Financial Counselor® (AFC®) certificate while providing financial counseling and education to the military community.

    **C. Defendant's Unlawful Conduct**

36. Long after the AFCPE Trademarks became well known by professionals in the field, Defendant NACCC began offering certification programs to become an "Accredited Financial Counselor", "Accredited Financial Counseling Professional", or a "Certified Housing Counselor."

37. NACCC advertises its certification programs for "Accredited Financial Counselor", "Accredited Financial Counseling Professional", and "Certified Housing Counselor" on its website

7

accessible at fcnonline.org.

38. The NACCC certification process stands in stark contrast to the rigorous process utilized by AFCPE.

   a. NACCC only requires students pursuing NACCC's "Accredited Financial Counselor" or "Certified Housing Counselor" certifications to read materials and take a multiple choice test.

   b. NACCC does not offer in-person certification classes.

   c. NACCC does not require students pursuing the "Accredited Financial Counselor" or "Certified Housing Counselor" certifications to complete or document any hours of counseling

   d. NACCC does not require students pursuing the "Accredited Financial Counselor" or "Certified Housing Counselor" certifications to obtain any letters of reference.

   e. Students pursuing any of NACCC's certifications are not required to sign a code of ethics.

   f. Prior to obtaining the "Accredited Financial Counselor" or "Certified Housing Counselor" certifications, NACCC requires students to obtain either the "Credit Counselor Certification" or "Financial Health Certification."

   g. However, the "Credit Counselor Certification" and "Financial Health Certification" only require students to read materials and take a multiple choice test.

   h. Students who have obtained the "Credit Counselor Certification" and "Financial Health Certifications" are only required to participate in 16 hours of continuing education units in order to renew their certificates.

   i. There is no additional continuing education requirement for students who obtained

8

the "Accredited Financial Counselor" or "Certified Housing Counselor" certifications.

j. The NACCC certification programs cost significantly less than the AFCPE certification programs.

k. The "Accredited Financial Counselor" program costs $650; the "Certified Housing Counselor" program costs $500; the "Credit Counselor Certification" program costs $400; the "Financial Health Certification" program costs $400.

l. In total, a student would have to pay $1,050 to become an "Accredited Financial Counselor."

m. In total, a student would have to pay $900 to become a "Certified Housing Counselor."

n. Neither the "Accredited Financial Counselor" program nor the "Certified Housing Counselor" program are accredited through the National Commission for Certifying Agencies.

39. On information and belief, NACCC began using the Infringing Designations to benefit from the reputation of the AFCPE Trademarks, which were established and promulgated by AFCPE.

40. AFCPE has received complaints and other comments from students and individuals in the professional community exhibiting substantial actual confusion as a direct result of NACCC's use of the Infringing Trademarks.

41. NACCC's use of the Infringing Trademarks is without authorization from AFCPE and constitutes a bad-faith intent to profit from the goodwill and value associated with the AFCPE Trademarks.

9

42. On information and belief, NACCC began offering certifications to obtain the Infringing Trademarks with full knowledge of the AFCPE Trademarks.

43. NACCC has had constructive notice of AFCPE's right in the AFCPE Trademarks since at least January 2014.

## COUNT I
## Trademark Infringement Under the Lanham Act (15 U.S.C. § 1114)

44. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 43 as if fully set forth herein.

45. AFCPE is the owner of all right, title, and interest in and to the AFCPE Trademarks.

46. NACCC's use in commerce of the "Accredited Financial Counselor", "Accredited Financial Counseling Professional" and "Certified Housing Counselor" designations, as described herein, constitute a reproduction, copying, and colorable imitation of the registered AFCPE Trademarks, in connection with the offering for sale and advertising of NACCC's services, in a matter that is likely to cause confusion or mistake or is likely to deceive consumers, including as to the origin, connection, association, or certification by AFCPE of NACCC's services.

47. NACCC's conduct is likely to cause potential students, employers, and others to believe, incorrectly, that NACCC is affiliated with, related to, sponsored by, or connected with AFCPE, in violation of 15 U.S.C. § 1114(1).

48. Despite its actual and constructive knowledge of AFCPE's ownership of the AFCPE Trademarks and the prior use by AFCPE of the AFCPE Trademarks, NACCC has willfully adopted and used the confusingly similar Infringing Trademarks without AFCPE's authorization or consent in connection with certification services that are highly similar to the services offered in connection with the AFCPE Trademarks.

49. NACCC's conduct has caused and, unless restrained and enjoined by this Court, will continue to cause, irreparable harm, damage, and injury to AFCPE and the professionals certified by AFCPE.

## COUNT II
### False Designation of Origin and False Association Under the Lanham Act (15 U.S.C. § 1125(a))

50. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 49 as if fully set forth herein.

51. AFCPE has spent substantial sums in promotion of the AFCPE Trademarks and has generated substantial revenues in connection with the services provided under the AFCPE Trademarks.

52. The distinctive AFCPE Trademarks have become impressed upon the minds of the trade and public as identifying AFCPE's rigorous certification process, and indicate the source of origin of such certification and services provided in association with the AFCPE Trademarks as emanating from AFCPE. AFCPE has built up a large and valuable business under the AFCPE Trademarks, and the reputation and goodwill in those marks is of great value to AFCPE. Additionally, professionals certified by AFCPE rely on the reputation and goodwill in those marks to secure employment.

53. NACCC's conduct as described herein constitutes use of a false designation of origin and/or false or misleading description or representation of fact on or in connection with its services which is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of NACCC with AFCPE, and/or as to the origin, sponsorship, or approval of NACCC's services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

11

54. NACCC's conduct as described herein also constitutes an attempt to trade on the goodwill that AFCPE has developed in the AFCPE Trademarks, all to the detriment of AFCPE.

55. NACCC's use in commerce of designations which are confusingly similar/identical to the AFCPE Trademarks, despite its having actual and constructive notice of AFCPE's prior rights in and to the AFCPE Trademarks, constitutes intentional conduct by NACCC to make false designations of origin and false descriptions about its services and commercial activities.

56. NACCC has caused and, unless restrained and enjoined by this court, will continue to cause, irreparable harm, damage and injury to AFCPE and to the professionals certified by AFCPE.

## COUNT III
### Violation of Ohio's Deceptive Trade Practices Act (Ohio Rev. Code §§ 4165.02 and 4165.03)

57. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 56 as if fully set forth herein.

58. By making unauthorized use of Plaintiff's distinctive AFCPE Trademarks, which unauthorized use has caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, or confusion as to affiliation, connection, or association with, or certification by, another, Defendant is violating Ohio's Deceptive Trade Practices Act. Ohio Rev. Code §§ 4165.02 and 4165.03.

59. NACCC has caused and, unless restrained and enjoined by this court, will continue to cause, irreparable harm, damage and injury to AFCPE and to the professionals certified by AFCPE.

## COUNT IV
## Common Law Trademark Infringement

60. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 59 as if fully set forth herein.

61. AFCPE is the owner of all right, title, and interest in and to the AFCPE Trademarks.

62. NACCC is using the Infringing Trademarks in commerce.

63. NACCC is using the mark in connecting with the sale, offering for sale, distribution, or advertising of its certification services.

64. NACCC's use of the Infringing Trademarks has caused and is likely to cause consumer confusion, mistake, and/or deception as to the source or origin of the certification services.

65. NACCC's conduct complained of herein is in violation of the common law of the State of Ohio.

66. NACCC's conduct has caused and, unless restrained and enjoined by this Court, will continue to cause, irreparable harm, damage, and injury to AFCPE.

67. AFCPE has no adequate remedy at law.

## COUNT V
## Common Law Unfair Competition

68. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 67 as if fully set forth herein.

69. NACCC's conduct complained of herein has led and is likely to lead to confusion amongst consumers.

13

70. NACCC acted in bad faith by offering certifications under its Infringing Trademarks.

71. NACCC's conduct is in violation of the common law of the State of Ohio.

72. NACCC's conduct has caused and, unless restrained and enjoined by this Court, will continue to cause, irreparable harm, damage, and injury to AFCPE.

73. AFCPE has no adequate remedy at law.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order in favor of Plaintiff and against Defendant as follows:

A. That the Court issue preliminary and permanent injunctive relief against Defendant and that Defendant, its officers, agents, representatives, servants, employees, attorneys, successors, and assignees, and all others in active concert or participation with Defendant, be enjoined and restrained from registering, using, or certifying under any designation that is owned by Plaintiff or that is identical or confusingly similar to any registered trademark owned by Plaintiff.

B. That the Court award Plaintiff actual damages, consequential damages, and statutory damages;

C. That the Court Order Defendant to disgorge all ill-gotten gains, and that any such ill-gotten gains be paid over to Plaintiff;

D. That the Court award Plaintiff their attorneys' fees and costs; and

E. That the Court grant Plaintiff all other relief to which they are entitled, and such other or additional relief as is deemed just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

Dated:  October 17, 2016	Respectfully submitted,

By:	/s/ D. Jeffrey Ireland
D. Jeffrey Ireland (0010443)
Trial Attorney
Jade K. Smarda (0085460)
FARUKI IRELAND & COX P.L.L.
110 N. Main St.
Dayton, Ohio 45402
Telephone: (937) 227-3710
Facsimile:  (937) 227-3717
djireland@ficlaw.com
jsmarda@ficlaw.com

/s/ Robert H. Newman
Robert H. Newman (*pro hac vice* application forthcoming)
Thomas P. Lane (*pro hac vice* application forthcoming)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700
rnewman@winston.com
tlane@winston.com

*Counsel for Plaintiff Association for Financial Counseling and Planning Education*

1108447.1